IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEPHANIE ROBERTSON, MARY ANN :
ROBERTSON, SAMUEL ROBERTSON,  :
and MATTHEW ROBERTSON,        :
                              :
          Plaintiffs,         :
                              :
     v.                       :    Civil Action No. 02-1656-JJF
                              :
HORTON BROTHERS RECOVERY, INC.:
and RICHARD BAXENDALE,        :
                              :
          Defendants.         :

---

Elwood T. Eveland, Jr., Esquire of THE EVELAND FIRM, Wilmington,
Delaware.
Attorney for Plaintiffs.

Horton Brothers Recovery, Inc., Pro Se Defendant.

---

**MEMORANDUM OPINION**

July __3__, 2007
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is the determination of damages owed to Plaintiffs as a result of violations of the Federal Debt Collection Practices Act by Defendant Horton Brothers Recovery, Inc. ("Horton Brothers"). On October 10, 2006, the Court granted Plaintiffs' Motion For Judgment As A Matter Of Law. A damages hearing was held on April 13, 2007. For the reasons set forth below, the Court concludes that Plaintiffs are entitled to actual damages in the amount of $75,000.00, statutory damages in the amount of $1,000 per Plaintiff, and attorney's fees in the amount of $9,250. Judgment will be entered in favor of Plaintiffs and against Horton Brothers in the total amount of $88,250.00

## I.   Findings of Fact

Plaintiff Stephanie Robertson financed a 1995 Hyundai Elantra from Reasonable Rides Incorporated ("Reasonable Rides") in early 2002. (Tr 4). Shortly thereafter, the car started having mechanical problems, and in late April 2002, it stopped running altogether. Id. At that point, Stephanie Robertson had the car towed to Porter Chevrolet and informed Reasonable Rides that the car was there awaiting repairs. (Tr. 4, 19).

On June 4, 2002, around 5:00 a.m., Stephanie's mother, Mary Ann Robertson, opened the door of her home to a man who asked to

1

speak with Stephanie.[1]  (Tr. 5).  Without identifying himself or
explaining his purpose, and growing louder with each request, the
man continuously said he needed to see Stephanie.  Id.  Ms.
Robertson asked him to leave several times, but he refused.  Id.
Eventually, Ms. Robertson woke up Stephanie.  Id.

    Stephanie went outside the home and talked to the man for a
few minutes.  (Tr. 17).  While watching Stephanie's conversation
concerning her vehicle, Ms. Robertson saw a black, unmarked truck
parked on the street, but she couldn't tell if anyone was in the
vehicle because the truck had tinted windows.[2]  (Tr. 6).  Though
the man never told Stephanie who he worked for or why he wanted
the car, she explained to him that she had taken the car to
Porter Chevrolet when it stopped running one to two weeks
earlier.  (Tr. 17, PX 2 at 72).  She then asked him to leave.
(PX 2 at 72).  Unsatisfied, and unwilling to immediately leave,
the man threatened to seek a warrant for Stephanie's arrest if
the car was not at Porter Chevrolet.  Id.  Stephanie then walked
back inside the house, the man got into the truck and drove away.

---

    [1] At the damages hearing, Plaintiffs' counsel suggested that
Horton Brothers contacted Plaintiffs on May 1, 2002.  However, in
all prior pleadings and depositions, Plaintiffs indicated that
the contact occurred on June 4, 2002.  Despite this discrepancy
about events which occurred nearly five years ago, the Court
finds Plaintiffs' testimonies and recollections to be credible.

    [2] Stephanie Robertson stated at her deposition that, while
she was standing outside talking to the man, she could see a
passenger in the truck, as well as the name "Horton Brothers" on
the side. (PX 2 at 71).

2

(Tr. 17).

Fifteen to twenty minutes later, around 5:30 a.m., the Robertsons began receiving harassing phone calls laced with profanity and physical threats. (Tr. 7, 10). The callers[3] continuously asked for Stephanie and demanded to know the location of her car. Id. Scared by the threatening and vulgar comments of the first calls, Ms. Robertson called her husband, Samuel, and asked him to leave work and come home. (Tr. 23). Ms. Robertson next called some repossessors she knew from her earlier work in the repossession business, to see if she could determine who had visited and was now calling her home. (Tr. 11). Mr. Robertson was told, correctly, that Horton Brothers was doing repossession work for Reasonable Rides. Id. In an attempt to verify this information, Stephanie's brother, Matthew, called Horton Brothers on his cell phone and offered to tell them where the car was if they would come back by the house in their truck. (Tr. 29). While Matthew and Ms. Robertson were waiting outside their home for the Horton Brothers truck to come back to the house, Defendant Richard Baxendale called and left a vulgar and harassing message on their answering machine. (Id., PX 1). The calls continued every five to ten minutes for nearly an hour, until Samuel arrived home around 6:30 a.m. and unplugged the

---

[3] Mary Ann Robertson testified that she heard at least three different voices making the various phone calls. (Tr. 9).

3

phone.  (Tr. 23).

Mr. Robertson took the rest of the day off from work, fearful that the Horton Brothers' representatives would return. (Tr. 27).  While they did not return to the Robertsons' home, Horton Brothers' employees did visit Stephanie Robertson's place of employment, threatening Stephanie with criminal action and harassing her co-workers (PX 2 at 83).  In response to this harassment, the Robertsons bought a guard dog to protect themselves.  (Tr. 13).

By its Motion For Judgment As A Matter Of Law, Plaintiffs requested that actual, statutory, and exemplary damages be assessed against Horton Brothers for its violations of the Federal Debt Collection Practices Act ("FDCPA") and for their claims of trespass, assault, invasion of privacy, negligence and intentional infliction of emotional distress.  Plaintiffs also requested that Horton Brothers pay Plaintiffs' court costs, attorneys fees, interest and any other damages the Court deems just.

## II.  DISCUSSION

In granting Plaintiffs' Motion For Judgment As A Matter Of Law, the Court concluded that Plaintiffs established their claims against Horton Brothers[4], including their claim for violation of

---

[4]     The Court also concluded that Horton Brothers should be precluded from pursuing any denials or defenses to Plaintiffs' claims, because of Horton Brothers' indifference to this

4

Section 1692f(6) of the FDCPA, which prohibits a repossessor from "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (a) there is no present right to possession of the property . . . ." 15 U.S.C. § 1692f(6)(a). The amount of damages for a violation of the FDCPA is determined pursuant to Section 1692k(a), which provides:

> any debt collector who fails to comply with any
> provision of this title with respect to any person is
> liable to such person in an amount equal to the sum of
> -
>
> (1) any actual damage sustained by such person as a
> result of such failure;
>
> (2)(A) in the case of any action by an individual, such
> additional damages as the court may allow, but not
> exceeding $1,000;...
>
> (3) in the case of any successful action to enforce the
> foregoing liability, the costs of the action, together
> with a reasonable attorney's fee as determined by the
> court....

In determining the amount of liability under this section, courts are directed to consider "among other factors, . . . the frequency and persistence of noncompliance . . ., the nature of the noncompliance and the extent to which such noncompliance was intentional . . . ." 15 U.S.C. § 1692k(b).

A.   Actual Damages

As a result of Horton Brothers' violations of the FDCPA, Plaintiffs request actual damages for trespass, assault, invasion

---

litigation as demonstrated by their repeated failure to adhere to the Court's Orders and appear for scheduled Court proceedings.

of privacy, negligence and intentional infliction of emotional distress. However, Plaintiffs have not quantified the amount of actual damages they are seeking, leaving that amount to the discretion of the Court. Based on the Court's Memorandum Opinion and Order granting judgment as a matter of law in favor of Plaintiffs, along with Plaintiffs' testimony at the damages hearing as set forth in the Court's findings of fact, the Court concludes that Plaintiffs have demonstrated that damages are warranted for trespass, assault, invasion of privacy and emotional distress. Based on the timing of the Horton Brothers' actions and the threatening, offensive and vulgar nature of their phone calls and visit to the Robertsons' home, the Court concludes that Plaintiffs are entitled to actual damages in the amount of $75,000.00.[5]

> B.   Statutory Damages For Violations of the Federal Debt
>       Collection Practices Act

Plaintiffs also seek statutory damages pursuant to Section 1692k(a)(2). By their Motion For Judgment As A Matter Of Law, Plaintiffs quantify the amount of statutory damages sought as $90,000 based on what they calculate as a total of 90 separate violations of the FDCPA against all four Plaintiffs.

In this Circuit, statutory damages are not awarded for each

---

[5]   In reaching its conclusion concerning the appropriate amount of damages, the Court credits the testimony of Plaintiffs concerning the extreme nature of Horton Brothers' conduct and the level of harassment inflicted by Horton Brothers on Plaintiffs.

violation of the FDCPA.  Rather, Section 1692(k)(a)(2) has been
interpreted to authorize an award of no more than $1,000 per
plaintiff per lawsuit as statutory damages.  <u>Goodmann v. People's</u>
<u>Bank</u>, 209 Fed. Appx. 111 (3d Cir. 2006) (holding that "§
1692k(a)(2)(A) is best read as limiting statutory damages to
$1,000 per successful court action"); <u>Howze v. Romano</u>, 1994 WL
827162, * 4-5 (D. Del. Dec. 9, 1994) (awarding the statutory
maximum of $1,000 per plaintiff); <u>Beattie v. D.M. Collections,</u>
<u>Inc.</u> 763 F. Supp. 925, 926, 928 (D. Del. 1991) (holding that "a
debt collector is liable for a single award of statutory damages
per plaintiff per lawsuit" regardless of the number of proven
violations of the FDCPA).

    In this case, each Plaintiff bases his or her claim on
individual contacts with Horton Brothers that violated the FDCPA.
In these circumstances, the Court concludes that the conduct of
the Horton Brothers toward each Plaintiff warrants allowing
damages in the amount of the statutory maximum.  Accordingly,
Plaintiffs will be awarded $1,000 each in statutory damages for a
total of $4,000.

    C.   <u>Costs and Attorney's Fees</u>
    Plaintiffs have prevailed on all counts against Horton
Brothers, and therefore, the costs of this action and reasonable
attorney's fees are appropriately awarded.  15 U.S.C. §
1692k(a)(3).  In this regard, Plaintiffs' attorney has provided

                                                                7

the Court with a submission requesting $12,350.00 in attorney's fees.[6]   In determining what comprises a reasonable attorney's fee, courts are instructed that simply taking the "product of reasonable hours times a reasonable rate does not end the inquiry." Hensley v. Eckerhart, 461 U.S. 424, 434 (1982).   There is no precise formula for establishing reasonable fees, and thus the Court must necessarily use its discretion.

In this case, Plaintiffs' attorney asserts that he rendered 49.4 hours of service to Plaintiffs for the preparation of this case; however, Plaintiffs' attorney has not divided his time per Defendant.  By his own description, his assessment of fees applies to the legal services he rendered to Plaintiffs "[d]uring the course of this action." (D.I. 91 at 2).  For example, Plaintiffs' attorney states that he spent 5.5 hours in the "preparation of written discovery and answers to the same" but Horton Brothers did not propound any written discovery in this case. (Id.)  Plaintiffs' attorney states that he spent 10 hours for "preparation of pleadings on **motions** for summary judgment." (Id.) (emphasis added).  Defendant Reasonable Rides was the only defendant to file a motion for summary judgment; however,

---

[6]      Plaintiffs have not made any submission regarding costs.  Accordingly, the Court will confine its decision to the submission pertaining attorney's fees.  To the extent that Plaintiffs have incurred identifiable costs, the Court will consider an amendment to the final judgment order awarding such costs if Plaintiffs can provide detailed support for them in writing.

Plaintiffs did file a Motion For Judgment As A Matter Of Law against Horton Brothers, which the Court understands is taken into consideration in the 10 hour number since he refers to "motions" for summary judgment in the plural.  Similarly, Plaintiff refers to 5.2 hours spent in "preparation and presentation at trial," however no trial was held in this action, but hearings were held.  Accordingly, the Court will reduce the total number of time spent by Plaintiffs' attorney by 12.4 hours, an amount reflecting half of the hours charged for the preparation of written discovery, depositions, and preparation for summary judgment motions, for a total of 31 hours.  The Court finds the billing rate for Plaintiffs' attorney of $250.00 per hour to be  reasonable, and the Court notes that no opposition to this rate has been filed by Horton Brothers.  Accordingly, the Court will award Plaintiffs attorney's fees in the amount of $9,250.00.[7]

## III. CONCLUSION

For the reasons discussed, Plaintiffs will be awarded damages in the total amount of $88,250.00, which reflects $75,000.00 in actual damages, $4,000.00 in statutory damages, and $9,250.00 in reasonable attorney's fees related to this

---

[7]     The Court will reconsider this award on an application by Plaintiffs, if the Court has misconstrued the evidence submitted.

9

litigation.

An appropriate Judgment Order will be entered.